```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                              :
THOMAS EDWARDS,                               :    01 Civ. 9397 (RJH)(THK)
                                              :
                      Petitioner,             :
                                              :
       -against-                              :    **MEMORANDUM**
                                              :    **OPINION AND ORDER**
BRIAN FISCHER, Superintendent of              :
Sing Sing Correctional Facility,              :
                                              :
                      Respondent.             :
                                              :
------------------------------------------------------------x
```

Petitioner Thomas Edwards brings this habeas petition pursuant to 28 U.S.C. § 2254 challenging his state court conviction for one count of murder in the second degree (felony murder) and one count of robbery in the first degree, crimes for which he is serving concurrent sentences of twenty-one years to life and from twelve to twenty-four years, respectively. In the petition, petitioner argues (1) that his Sixth Amendment right to confront witnesses was violated when the trial court refused to allow cross examination or expert testimony on the subject of the New York City Police Department's ("NYPD") guidelines on the use of deadly physical force; and (2) that the trial court violated petitioner's Fourteenth Amendment rights by giving erroneous instructions on the felony murder charge, and by holding a conference without petitioner and thereafter giving an erroneous *Allen* charge to the jury.

On July 12, 2004 Magistrate Judge Theodore H. Katz issued a Report and Recommendation (the "Report") recommending that the petition be denied in its entirety.

1

After a brief extension, petitioner filed timely objections to the Report. For the reasons set forth below, the Court adopts the Report in its entirety and denies the petition.

## BACKGROUND

The facts underlying petitioner's trial and incarceration are extensively outlined in the Report which is attached to this opinion for ease of reference. Petitioner and three accomplices attempted to rob a Chemical Bank branch located at 91st Street and Broadway in Manhattan. As they were fleeing the building one of Edward's accomplices, Sidney Fisher, exchanged shots with two police officers responding to a report of the robbery. Fisher ran west exchanging shots with and hitting a third police officer who had joined the chase. On 93rd Street, Fisher grabbed a bystander to use as a shield and continued to fire at the approaching officers. Fisher was hit and released the bystander but fell into a crouch and pointed his gun at the officers. Several officers fired at Fisher, killing him. However, the bystander was also hit, apparently by an officer's errant shot, and died as a result of her wound. At the same time Edwards and another accomplice fled eastward and were arrested, hiding in a building on 91st Street. Petitioner was thereafter charged with felony murder and robbery.

At a November 18, 1993 pretrial hearing petitioner's trial counsel sought permission to call an expert to testify regarding NYPD guidelines (the "Guidelines") on the use of deadly physical force. (*See* November 18, 1993 Preliminary Hearing Transcript 4 ("First Prelim. Hrg. Tr.").) At a second hearing conducted on December 3, 1993, the trial court preliminarily ruled that it was "not inclined to allow expert testimony on the issue of whether the police conduct was an intervening cause of the bystander's death." (December 3, 1993 Preliminary Hearing Transcript 2 ("Second Prelim. Hrg. Tr.").) The court offered, however, that "once counsel gets the transcript of the grand

jury minutes and/or other discovery, if you choose to have your expert review that matter and summarize what he or she wants to say, you can do that and make your record whether you think it will add or detract from the jury consideration on the issue." (*Id.* at 2-3.) Petitioner did not subsequently proffer proposed expert testimony on the subject of the Guidelines.

But the subject did come up at trial. The transcript shows that during the cross-examination of Officer Bauman, counsel for petitioner's co-defendant asked: "[n]ow, when you were in the Police Academy receiving your training, you were instructed in certain situations when you would be authorized to use deadly force against another person, correct?" (Trial Tr. 2489.) The State objected to this question but was overruled after Officer Bauman answered affirmatively. Counsel then asked Officer Bauman a follow up question: "[d]eadly physical force would encompass shooting at them, correct?" (*Id.*) Before the officer could answer, the state renewed its objection and a sidebar was called.

At the sidebar, the State argued that defense counsel's line of questioning was inconsistent with the court's December 3 ruling in that it would impermissibly place before the jury the question of whether the officers' actions had violated the Guidelines. (*Id.* at 2490-91.) Counsel for petitioner's co-defendant responded that he only intended to ask the following three questions about Officer Bauman's police training: "(1) [were you] trained in the use of deadly force; (2) [can you use it] if somebody is shooting at you; [and] (3) [isn't it true that] you are not obligated to use it and you are trained not to use it if it would endanger innocent lives." (*Id*. at 2495.) The court then gave petitioner's counsel an opportunity to be heard on the subject. Counsel responded: "I am joining in his application, Judge." (*Id*. at 2496.)

3

The court then ruled that Officer Bauman could be asked those three questions, provided they were prefaced with the phrase "[a]s a trained and experienced officer, you would agree. . . ." (*Id*. at 2499-500.) At the same time, the court advised counsel that it would not allow inquiry into Officer Bauman's "particular training or deadly force or what his understanding is [regarding] what is in any manuals," explaining that it felt such issues irrelevant. (*Id*. at 2501.) The court concluded by asking for "[a]ny exceptions or further points." (*Id*. at 2502.) Petitioner did not note any exceptions, either in response to this invitation or during the remainder of Officer Bauman's testimony. (*See id*. at 2502-28B.)

After the jury convicted petitioner of robbery and felony murder, petitioner appealed on Sixth and Fourteenth Amendment grounds. With respect to petitioner's Sixth Amendment claim, the New York Appellate Division, First Department, held that "[s]ince [petitioner] acquiesced in the [trial] court's compromise ruling and did nothing to alert the court that it had still not provided appropriate relief, [petitioner] failed to preserve [his] claim that the court improperly precluded cross-examination of police officer concerning the internal police guidelines on the use of deadly force." *People v. Edwards*, 278 A.D.2d 151, 152 (N.Y. App. Div. 2000). The First Department also noted that, had it reviewed the claim, it would have concluded that "there was no need for a trial within a trial on the subject of police conduct" and that the trial court had nevertheless "allowed the defense wide latitude in which to delve into [the] subject [of deadly physical force]." *Id*.[1]

---

[1] Petitioner did not raise on appeal the additional Sixth Amendment claim raised in the instant objections, that is, whether the trial court erroneously excluded expert testimony on the Guidelines.

4

Petitioner also claimed on appeal that the trial court violated his due process rights by failing to instruct the jury to consider whether Fisher's flight had terminated by the time the bystander was killed and by failing to give proper supplemental instructions in response to the jury's questions on this issue. Finally, petitioner claimed that he was deprived of his right to be present during a material stage of trial because he was not present at a colloquy in the judge's robing room on an *Allen* charge, which charge petitioner claims was coercive. The First Department rejected these claims without discussion. *Id.*

The New York Court of Appeals denied petitioner leave to appeal. *People v. Edwards*, 96 N.Y.2d 758, 758 (N.Y. 2001). This petition followed and, as noted, on July 12, 2004, Magistrate Judge Katz issued a report recommending that it be denied. The Court now turns to petitioner's objections to the Report, beginning with the applicable standard of review.

## STANDARD OF REVIEW

A district court may designate a magistrate to hear and determine certain motions and to submit to the court proposed findings of fact and a recommendation as to the disposition of the motion. *See* 28 U.S.C. § 636(b)(1). Within ten (10) days of service of the recommendation, any party may file written objections to the magistrate's report. *Id.* If no objections are filed, or where objections are "merely perfunctory responses," argued in an attempt to "engage the district court in a rehashing of the same arguments set forth in the original petition," reviewing courts should review a report and recommendation for clear error. *Vega v. Artuz*, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002); accord *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985). On the other hand, where objections to a report are "specific and . . . address only those portions of the proposed

5

findings to which the party objects," district courts should conduct a *de novo* review of the issues raised by the objections. *Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan*, 806 F. Supp. 380, 381-82 (W.D.N.Y. 1992).

Petitioner does not expressly object to the Report's recommendation that his Fourteenth Amendment claims be denied.[2] This Court finds no clear error in that recommendation and therefore adopts it in its entirety.[3] The remainder of the Report—to which petitioner has objected with specificity—deals with petitioner's Sixth Amendment claim that he was denied the opportunity to cross examine state witnesses on the subject of the Guidelines. A *de novo* review of those sections of the Report follows.

## DISCUSSION

Edwards filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (April 24, 1996). Thus, this Court applies the standard of review established by Section 2254(d) of AEDPA. *Torres v. Berbary*, 340 F.3d 63, 67-68 (2d Cir. 2003); *Vasquez v. Strack*, 228 F.3d 143, 147 (2d Cir. 2000). Under AEDPA, a federal court may grant a petition for habeas corpus, notwithstanding contrary state court adjudication on the merits, in accordance with the following provisions:

---

[2] In a footnote to his objections, petitioner explains that "[w]hile only [his] objections to the Magistrate's recommendation regarding the exclusion of evidence concerning the [G]uidelines is elaborated herein, it is no [sic] way intended as a waiver of any appropriate objection to the other parts of the [Report]." (Obj. 3). This general objection cannot trigger *de novo* review. *Hunter v. Sabourne,* 2005 WL 2709176, at *4 (S.D.N.Y. Oct. 20, 2005).

[3] With respect to petitioner's first claim regarding the right to be present during the colloquy, Magistrate Judge Katz found that petitioner's absence from Judge Andrias' robing room did not "frustrate the fairness of the proceedings." (Report 20); *See Tennessee v. Lane*, 541 U.S. 509, 523 (2004) (citation omitted). He also concluded that petitioner failed to show his presence at the robing room conference would have helped his defense. (Report 20.) With respect to the second due process claim regarding improper jury instructions, the Magistrate Judge properly found that petitioner failed to demonstrate how the *Allen* charge was incorrect under state law, much less that it "so infected the entire trial that the resulting conviction violates due process." (Report 13); *DelValle v. Armstrong*, 306 F.3d 1197, 1201 (2d Cir. 2002). In addition, the Magistrate Judge correctly concluded that the trial court's supplemental instructions were "fair and balanced" responses to the jury's questions. (Report 17.)

6

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

- (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
- (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The primary issue raised by Edwards is whether the Appellate Division's determination that N.Y. Crim. Proc. Law § 470.05 (McKinney 1994) operated as a procedural bar to reviewing his Sixth Amendment claims was contrary to federal law. (*See* Pl.'s Objections 3-6.) Specifically, Edwards claims that the state appellate court improperly concluded that he had waived or otherwise procedurally defaulted on preserving his claims that the state trial court improperly (1) prohibited any reference to the Guidelines during cross-examination of Officer Bauman, and (2) precluded expert testimony on the Guidelines.[4] (*See* Pl.'s *Id.* at 3-4.) Edwards asserts that the decision of the Appellate Division amounted to an "exorbitant application" of the rule of preservation. (*Id.* at 3-6.)

---

[4] The claim regarding exclusion of expert testimony was raised for the first time in petitioner's objections to the Report. It was not raised in the petition and, as noted, was not presented on appeal to the Appellate Division.

7

I. <u>Independent and Adequate State Law Grounds</u>

When a petitioner violates a state procedural rule which is "'independent' of [a] federal question and 'adequate' to support the judgment," federal habeas review is generally foreclosed. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999); *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996). The independent and adequate state ground doctrine "first arose in the context of direct appeals to the Supreme Court from final judgments of the state courts." *Garcia*, 188 F.3d at 76. Because the Supreme Court "has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory." *Coleman*, 501 U.S. at 729. In order to avoid issuing advisory opinions that ran afoul of jurisdictional concerns, the Supreme Court thus announced that it would not review such adequate and independent state procedural grounds. *Id.*

The Supreme Court has extended the independent and adequate state ground doctrine to federal habeas review although jurisdictional concerns do not persist in that context. *Garcia*, 188 F.3d at 76. Specifically, a "habeas court's decision in a federal question would not be rendered advisory by the existence of an independent state ground of the decision" since the habeas court "does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*." *Id.* (internal citations omitted). As such, principles of finality, comity and the orderly administration of justice instead dictate that a federal habeas court faced with an independent and adequate state ground should defer to the state court's determination. *Dretke v. Haley*, 541 U.S. 386, 386 (2004). In effect, the independent and adequate state doctrine prevents state prisoners whose custody was

8

supported by independent and adequate state grounds from "undermin[ing] the state's interest in enforcing its laws." *Coleman*, 501 U.S. at 731.

State procedural bars are independent and adequate when such laws are "firmly established and regularly followed" by the state in question. *Ford v. Georgia*, 498 U.S. 411, 422-24 (1991); *Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003); *see also James v. Kentucky*, 466 U.S. 341, 348-49 (1984) (holding that Kentucky's "distinction between [jury] admonitions and instructions [was] not the sort of firmly established and regularly followed state practice that can prevent implementation of federal constitutional rights"). According to New York's contemporaneous objection rule, the law at issue in this case, the basic preservation rules require "that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the [court] the opportunity to remedy the problem and thereby avert reversible error." *People v. Luperon*, 85 N.Y.2d 71, 78 (1995); *accord Dugger v. Adams*, 489 U.S. 401, 408 (1989) (noting the benefits of state laws requiring timely objections); *see* N.Y. Crim. Proc. Law § 470.05. This rule is "firmly established and regularly followed" in New York. *E.g.*, *Garcia*, 188 F.3d at 78-79 (following contemporaneous objection rule); *Bossett v. Walker*, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (same); *Fernandez v. Leonardo,* 931 F.2d 214, 216 (2d Cir. 1991) (same).

II. Appellate Division's Application of N.Y. Crim. Proc. Law § 470.05

A. Limitations on Cross-Examination

Petitioner asserts that, in the present case, the Appellate Division's finding of a violation of N.Y. Crim. Proc. Law § 470.05 amounted to an "exorbitant application" of the rule on preservation. (Pl.'s Objections 3-6.) Ordinarily, violation of firmly established and regularly followed state rules—for example, those involved in this case—

will be adequate to foreclose review of a federal claim. *James*, 466 U.S. at 348; *see Ford*, 498 U.S. at 422-24. There are, however, some "exceptional cases in which [the] exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemma*, 534 U.S. 362, 366 (2002). The Supreme Court has established three "guideposts" to determine if a state court has exorbitantly applied a procedural rule:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto*, 331 F.3d at 240 (citing *Lee*, 534 U.S. at 381-83). Such "guideposts" are not intended as a rigid test; they are factors to help "evaluat[e] the state interest in a procedural rule against the circumstances of a particular case." *Id*. at 240.

The Supreme Court has held that there exists only a "limited category" of such exceptional cases, where an exorbitant application renders an otherwise "adequate and independent" state ground inadequate. *Lee*, 534 U.S. at 376. For example, in *Lee*, a Missouri trial court judge denied the petitioner's motion for continuance because (1) the judge needed to be with his daughter in the hospital the next day, and (2) another scheduled trial prevented him from continuing petitioner's case on the following business day. *Id.* at 381. Upon direct appeal, a Missouri appellate court found the petitioner's continuance motion "defective" for failing to comply with a Missouri state rule requiring continuance motions to be both in writing and accompanied by an affidavit. *Id.* at 366. However, upon further appeal, the Supreme Court held that the appellate court's application of the Missouri rule had been exorbitantly applied in the petitioner's case,

because the trial judge had denied the petitioner's motion for "a reason that could not have been countered by a perfect motion for a continuance." *Id.*

The Second Circuit has stated that the first *Lee* factor—whether the trial court "actually relied" on the procedural violation—is not dispositive in evaluating the need for contemporaneous objection. *See Cotto*, 331 F.3d at 242 (explaining that "the lack of contemporaneous objection would not, almost by definition, be mentioned by the trial court").

Regarding the second *Lee* factor, New York cases compel a party to comply with the contemporaneous objection rule in order to preserve an objection for appellate review. *People v. Quinones*, 672 N.Y.S.2d 689 (N.Y. App. Div.1998); *Luperon*, 85 N.Y.2d at 78. According to this rule, questions of law are preserved for review only when a "protest . . . was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same." N.Y. Crim. Proc. Law L. § 470.05. The New York Court of Appeals has stated that such a rule "requires, at the very least, that any matters which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error." *Garcia*, 188 F.3d at 78 (quoting *Luperon*, 85 N.Y.2d at 78); *see Fernandez*, 931 F.2d at 216 (holding that failure to object at trial renders a claim procedurally defaulted under N.Y. Crim. Proc. Law § 470.05).

Generally, "once a party has made his position known to the court, the law does not require [him] to make repeated 'pointless protests' after the court has ruled." *Cotto*, 331 F.3d at 247. The Second Circuit has held, however, that "the question is whether the application of the procedural rule is 'firmly established and regularly followed' *in the*

11

*specific circumstances* presented in the case." *Id.* at 240 (emphasis added). In the specific context of a compromise ruling, New York cases indicate that an additional objection is required in order to preserve the inadequacy of the ultimate compromise ruling. *See, e.g.*, *People v. Cintron*, 304 A.2d 454, 455, 758 N.Y.S.2d 636 (N.Y. App. Div. 2003) (where "[d]efendant clearly acquiesced in the court's compromise ruling . . . [t]he defendant failed to preserve his present challenge to that ruling"); *People v. Jones*, 256 A.D.2d 30, 31, 680 N.Y.S.2d 847 (N.Y. App. Div. 1998) (same); *Quinones*, 250 A.D.2d at 352 (defendant's challenge unpreserved because of failure to object to the court's compromise ruling); *People v. McAllister*, 245 A.D.2d 184, 184, 665 N.Y.S.2d 897 (N.Y. App. Div. 1997) (same).

Petitioner's agreement to the compromise ruling without further objection, therefore, does not constitute "substantial compliance" with N.Y. Crim. Proc. Law C.P.L. § 470.05 as prescribed by the third *Lee* factor. Petitioner expressly agreed to a compromise ruling permitting counsel for co-petitioner to ask only three particular questions regarding officer Bauman's training in the use of deadly physical force. (Trial Tr. 2496.) The court prohibited counsel from asking any additional questions about the police guidelines. (*Id.* at 2500.) Petitioner raised no objections to the compromise ruling at this, or any other time during the trial. (*See id.* at 2502.)

Subsequent objections to the compromise ruling would have alerted the court of "any potential error while there [was] still an opportunity to address it," *Cotto*, 331 F.3d at 245. This, according to N.Y. Crim. Proc. Law § 470.05, is the very governmental interest underlying the contemporaneous objection rule. *Id.* at 243; *cf. Lee*, 534 U.S. at 366 (holding that a requirement that continuance applications be written rather than oral, in the midst of a trial, are only ritual and do not further a "perceivably state interest").

Furthermore, the "realities of trial" permit such objections to be made. *Cf. Lee*, 534 U.S. at 383 (noting that the "realities of trial" do not require counsel to complete a written continuance application, along with an affidavit, in the midst of trial).

Accordingly, the Appellate Division's determination that petitioner "fail[ed] to alert the court that it had still not provided appropriate relief" is consistent with New York's contemporaneous objection law which requires an objecting party to lodge a protest at a time when the court has an "opportunity of effectively changing the same." *See* N.Y. Crim. Proc. Law § 470.05. Such a holding is also reasonable in light of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (AEDPA). *See Lee,* 534 U.S. at 378 ("the general principle [is] that an objection which is ample and timely to bring the alleged federal error to the attention of the trial court and enable it to take appropriate corrective action is sufficient to . . . preserve the claim for review").

    B.    <u>Preclusion of Expert Testimony</u>

With regard to petitioner's claim concerning the preclusion of expert testimony, petitioner failed to assert this claim in his direct appeal to the Appellate Division. Since the Appellate Division was never given the opportunity to review this claim, petitioner has failed to exhaust the claim in the state courts. *See Galdamez v. Keane*, 394 F.3D 68, 72 (2d Cir. 2005) (stating that "[c]omity thus dictates that . . . state courts should have the first opportunity to review [the] claim and provide any necessary relief"); *accord Feaster v. Beshears*, 56 F. Supp. 2d 600, 604 (D. Md. 1999) ("The doctrine of exhaustion is grounded in principles of comity, and provides states with the first opportunity to address and correct alleged violations of state prisoner's rights.") The Court notes that "[g]enerally, if a federal habeas petition contains unexhausted claims, a federal court

should dismiss it." *Bossett v. Walker*, 41 F.3d 835, 828 (2d Cir. 1994). However, the Second Circuit has held that such claims may be deemed exhausted if a petitioner has no further "remedies available" in the state courts. *Id.* (citing *Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991).

For example, in *Bossett v. Walker*, the petitioner failed to include two of his claims when he applied for leave to appeal to the New York Court of Appeals. *See id.* at 829. The Second Circuit held that the petitioner's failure to address these claims before the Court of Appeals barred further review in the New York courts since he "ha[d] already made the one request for leave to appeal to which he is entitled." *Id.* (citing N.Y. Court Rules § 500.10(a)). The Second Circuit also precluded the appellants from seeking collateral review. *Id.* (citing N.Y. Crim. Proc. Law § 440.10(2)(c) (McKinney 1994)) (stating that where the claim could have been raised on direct review but was not, collateral review is barred). Noting that it would be "fruitless" to require the appellants to then bring the claims in state court, the Second Circuit found the claims exhausted. *Id.* Similarly, in the present case, petitioner failed to include his claim regarding preclusion of expert testimony when he applied for leave of appeal, and therefore had no more "remedies available" for pursuing this claim in New York courts. Therefore, the Court deems petitioner's claim exhausted.

The Court notes, however, that petitioner raises his claim regarding the preclusion of expert testimony for the first time in his objections to the Report. In the context of federal habeas review, "a petitioner is not permitted to raise an objection to a magistrate judge's report that was not raised in his original petition." *Chisolm v. Headley*, 58 F. Supp. 2d 281, 284 n.2 (S.D.N.Y. 1999) (citing *Harris v. Pulley*, 885 F.2d 1354, 1277-78 (9th Cir. 1988)). Otherwise, "it would unduly undermine the authority of the Magistrate

Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments." *Abu-Nassar v. Elders Futures, Inc.*, 1994 WL 445638 at *5, n.2, (S.D.N.Y. Aug. 17, 1994).

In any event, the Court dismisses this claim as meritless. When counsel for petitioner sought a ruling during a preliminary hearing allowing him to call an expert to testify about police guidelines on the use of force, the state trial court stated that it was "not inclined to allow expert testimony on the issue of whether the police conduct was an intervening cause." (Second Prelim. Hrg. Tr. 2.) However, the court then stated that "once counsel [got] the transcript of the grand jury minutes and/or other discovery," they could proffer a summary of expert testimony for the court to consider. (*Id.* at 2-3). Petitioner's counsel responded "fine, your Honor," but failed to submit any proposed expert testimony once he received the grand jury transcript or at any other point during the trial.

### C. Petitioner's Request for Review on the Merits, Asserting Actual Innocence

Notwithstanding the state procedural bar, petitioner asks the court to exercise review over his Sixth Amendment claims because a subsequent civil verdict entered against Police Officer Bauman proves petitioner's innocence. (*See* Pl.'s Objections 6-8). Respondent argues that, despite any procedural deficiencies, petitioner's claim is without merit. (Answer 42.)

A federal habeas petitioner "may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)); *Murray v. Carrier*, 488 U.S. 478, 496 (1986). Actual

15

innocence, however, "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To demonstrate "actual innocence" a habeas petitioner must introduce new reliable evidence that was not present at trial. *Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003). The petitioner "must [then] show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327; *Sweet v. Bennett,* 353 F.3d 135, 142 (2d Cir. 2003) (rejecting actual innocence claim where petitioner merely asserted that jury charges against him were inconsistent).

Petitioner has not met that burden here. His claim, in essence, is that Officer Bauman's actions (a bullet from his gun apparently struck and killed the victim) were an intervening force sufficient to relieve him of guilt for felony murder. (Pl.'s Objections 6.) In making this argument, petitioner asserts that the jury in the civil case that found Officer Bauman liable had the "benefit" of expert testimony regarding such deadly police force, the implication being that his criminal jury would have reacted similarly had it been presented with similar evidence. (Pl.'s Objections 7-8.) Although not without superficial appeal, this argument has several flaws. Most prominently, it overlooks the fact that "different burdens of proof complicate efforts to analogize between criminal and civil trials." *Ferreira v. Westchester County*, 917 F. Supp. 209, 218 (S.D.N.Y. 1996); *accord Anderson v. Liberty Lobby*, 477 U.S. 242, 272 (1986). In other words, a civil finding of police negligence or recklessness is simply not equivalent to—and therefore cannot be analogized with—a finding that police conduct was an intervening cause sufficient to exculpate a defendant a charge of felony murder charge.

Indeed, for just this reason, and "to ensure that the fundamental miscarriage of justice exception [remains] 'rare,'" *Schlup*, 513 U.S. at 321, actual innocence must be

demonstrated by presenting new reliable evidence, i.e., "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Id.* at 324. Petitioner has presented no such evidence in this case and therefore has not "ma[d]e the necessary showing required under *Schlup* to bypass the procedural bars." *See Dunham*, 313 F.3d at 730. Neither has petitioner shown cause for his procedural default because he has failed to identify an "objective factor external to the defense impeded counsel's efforts to comply with [New York's] procedural rule." *Fernandez*, 931 F.2d at 216 (citing *Murray*, 477 U.S. at 488). Accordingly, petitioner's final objection is also rejected.

## CONCLUSION

The petition is denied. Petitioner has not made a substantial showing of a denial of a federal right, *Tankleff v. Senkowski*, 135 F.3d 235, 241 (2d Cir. 1998), and as such, the Court also declines to issue a certificate of appealability, *see* 28 U.S.C. § 2253(c)(2). The Clerk of the Court is directed to dismiss the petition and close this case.

SO ORDERED.

Dated: New York, New York
February 7, 2006

Richard J. Holwell
United States District Judge

17